AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of:<br>The persons of Starla Shaffer, Height 5'3", Weight 220 lbs., Native American, and Vanessa Marie Gonzalez, Height: 5'5", Weight 190 lbs., Native American, both residing at 2150 East Jackson Circle, Mohave Valley, AZ 86440 | Case No.   22-9369MB |

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ____10/6/2022____ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __9/22/2022@10:46am__          *EsWillett*
                                                                              *Judge's signature*

City and state: __Phoenix, Arizona__          __Honorable Eileen S. Willett, U.S. Magistrate Judge__
                                                                   *Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF PERSONS AND PROPERTY TO BE SEARCHED**

The persons of Starla Shaffer, Height 5'3", Weight 220 lbs., Native American, and Vanessa Marie Gonzalez, Height 5'5", Weight 190 lbs., Native American, both residing at 2150 East Jackson Circle, Mohave Valley, Az 86440 (photograph of residence below) to include the search of their persons, wherever they may be found, for their cell phones and/or other evidentiary items as set forth in the Affidavit and Attachment B.



## ATTACHMENT B – THINGS TO BE SEARCHED FOR AND SEIZED

1.     The persons of Starla Shaffer, Height 5'3", Weight 220 lbs., Native American, and Vanessa Marie Gonzalez, Height 5'5", Weight 190 lbs., Native American, both residing at 2150 East Jackson Circle, Mohave Valley, AZ 86440 (photograph of residence on Attachment A) to include the search of their persons, wherever they may be found, for their cell phones and/or other evidentiary items as set forth in the Affidavit and this Attachment B.

2.     Cell phones of Starla Shaffer and Vanessa Marie.

3.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES that relate to violations of 18 U.S.C. Section 1153 and Arizona Revised Statutes 13-3623.

      a.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      b.  photographs of the named subjects with Jane Doe 1;

      c.  photographs of both an injured and uninjured Jane Doe 1 as well as photographs of items that may have been used for discipline;

      d.  communications between Starla Shaffer and Vanessa Gonzelez related to the caregiving of Jane Doe 1;

      e.  communications related to the possession of unlawfully possessed controlled substances, including marijuana, Tetrahhydrocannabinol (THC), methamphetamine, or substances appearing to be methamphetamine (e.g., white crystalline substances), including communications related to the administration of such drugs to Jane Doe 1;

      f.  any calendar information and/or communications related to the health care of Jane Doe 1, such as doctor's appointments, efforts to get her medical care and/or the lack thereof;

      g.  any stored medical records of Jane Doe 1;

h. any Closed-Circuit Television (CCTV) recording images saved on the SUBJECT CELLULAR TELEPHONES to include images from baby monitors, surveillance cameras, recording devices, digital voice recorders, digital recording devices, cellular telephones;

i. any apps on the SUBJECT CELLULAR TELEPHONES that may be wifi connected with any baby monitors or electronic surveillance devices;

j. evidence of recent internet search history;

k. any apps commonly used for encrypted messaging, i.e. Facebook Messenger, Whatsapp, etc.; and

l. contextual information necessary to understand the above evidence.

4.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

5.      This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of
The persons of Starla Shaffer, Height 5'3", Weight 220
lbs., Native American, and Vanessa Marie Gonzalez,
Height: 5'5", Weight 190 lbs., Native American, both
residing at 2150 East Jackson Circle, Mohave Valley,
AZ 86440

Case No.   22-9369MB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1153 and Arizona Revised Statutes 13-3623 | Child Abuse |

The application is based on these facts:

### See attached Affidavit of Special Agent

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Sharon K Sexton
SHARON SEXTON
Digitally signed by SHARON SEXTON
Date: 2022.09.22 09:10:40 -07'00'

_____
*Applicant's Signature*

Sworn to telephonically.
Date: _9/22/2022@10:46am_

Donald Ferreira, FBI Special Agent
*Printed name and title*

_____
*Judge's signature*

City and state: Phoenix, Arizona

Honorable Eileen S. Willett, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### DESCRIPTION OF PERSONS AND PROPERTY TO BE SEARCHED

The persons of Starla Shaffer, Height 5'3", Weight 220 lbs., Native American, and Vanessa Marie Gonzalez, Height 5'5", Weight 190 lbs., Native American, both residing at 2150 East Jackson Circle, Mohave Valley, Az 86440 (photograph of residence below) to include the search of their persons, wherever they may be found, for their cell phones and/or other evidentiary items as set forth in the Affidavit and Attachment B.



## ATTACHMENT B – THINGS TO BE SEARCHED FOR AND SEIZED

1. The persons of Starla Shaffer, Height 5'3", Weight 220 lbs., Native American, and Vanessa Marie Gonzalez, Height 5'5", Weight 190 lbs., Native American, both residing at 2150 East Jackson Circle, Mohave Valley, AZ 86440 (photograph of residence on Attachment A) to include the search of their persons, wherever they may be found, for their cell phones and/or other evidentiary items as set forth in the Affidavit and this Attachment B.

2. Cell phones of Starla Shaffer and Vanessa Marie.

3. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES that relate to violations of 18 U.S.C. Section 1153 and Arizona Revised Statutes 13-3623.

    a. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    b. photographs of the named subjects with Jane Doe 1;

    c. photographs of both an injured and uninjured Jane Doe 1 as well as photographs of items that may have been used for discipline;

    d. communications between Starla Shaffer and Vanessa Gonzelez related to the caregiving of Jane Doe 1;

    e. communications related to the possession of unlawfully possessed controlled substances, including marijuana, Tetrahhydrocannabinol (THC), methamphetamine, or substances appearing to be methamphetamine (e.g., white crystalline substances), including communications related to the administration of such drugs to Jane Doe 1;

    f. any calendar information and/or communications related to the health care of Jane Doe 1, such as doctor's appointments, efforts to get her medical care and/or the lack thereof;

    g. any stored medical records of Jane Doe 1;

h.  any Closed-Circuit Television (CCTV) recording images saved on the SUBJECT CELLULAR TELEPHONES to include images from baby monitors, surveillance cameras, recording devices, digital voice recorders, digital recording devices, cellular telephones;

i.  any apps on the SUBJECT CELLULAR TELEPHONES that may be wifi connected with any baby monitors or electronic surveillance devices;

j.  evidence of recent internet search history;

k.  any apps commonly used for encrypted messaging, i.e. Facebook Messenger, Whatsapp, etc.; and

l.  contextual information necessary to understand the above evidence.

4.    Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

- 2 -

5.      This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
**ELECTRONICALLY SUBMITTED AFFIDAVIT**

I, <u>FBI Special Agent Donald Ferreira</u>, state under oath as follows:

1.      I am employed as a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and have been so employed since September 2015.  I have more than 7 years of experience as a sworn federal law enforcement officer.  I am currently assigned to the FBI Phoenix Division, Lake Havasu City Resident Agency, and charged with the investigation of crimes occurring in (among other places) Mohave County, Arizona.  My duties include the investigation of violent crimes occurring within Indian Country as well as child abuse/ neglect crimes within the District of Arizona.

2.      The information contained in this affidavit is based upon my personal knowledge, training, experience, as well as information provided by other law enforcement officers and witnesses including those listed herein.  I have not included every fact known to me concerning this investigation.  I have set forth only the facts necessary to establish probable cause to support issuance of the requested search warrant. This affidavit is in support of an application for a search warrant to search the persons of Starla Shaffer (S.S.), Height 5'3", Weight 220 lbs., Native American, and Vanessa Marie Gonzalez (V.G.), Height 5'5", Weight 190 lbs., Native American, both residing at 2150 East Jackson Circle, Mohave Valley, Az 86440, to include the search of their persons, wherever they may be found, for their cell phones and/or other evidentiary items as set forth in the Affidavit and Attachment B.  I will be seeking evidence of violations of Title 18, United States Code,

1

§1153 and Arizona Revised Statutes (ARS) § 13-3623 Child Abuse.   The items to be searched for and seized are particularly described in Attachment B.

### Background/Introduction

3.   This case involves the child abuse of a 3-year-old female child, Jane Doe 1, by her guardian, S.S., and S.S.'s domestic partner, V.G., in violation of Title 18, United States Code, §1153 and Arizona Revised Statutes (ARS) § 13-3623.

4.   In approximately January 2022, S.S. – who is in an adult female (age 33, Height 5'3", Weight 220 lbs., Native American, and who is residing at 2150 East Jackson Circle, Mohave Valley, Az 86440), became the Fort Mojave Tribal Court legal guardian of Jane Doe 1, a minor (age 3), and Jane Doe 2, a minor (age 15).   On September 20, 2022, Emergency Medical Services (EMS) responded to 2150 South Jackson Circle, Mohave Valley 86440, regarding a call of a child, later identified as 3-year-old Jane Doe 1 who had seizure related medical issues at her home address of 2150 South Jackson Circle, Mohave Valley, Arizona 86440. Upon EMS taking Jane Doe 1 to the Valley View Medical Center (VVMC), medical personnel observed multiple bruises on her face, legs, back, and severe bruising on her buttocks. Valley View Medical Personnel contacted the Fort Mojave Tribal Police Department (FMTPD) to report suspected child abuse. Based on Jane Doe's injuries, she was flown to Sunrise Hospital located in Las Vegas, Nevada for advanced medical treatment. Upon arrival, after a complete medical evaluation, it was discovered that Jane Doe 1 had multiple skull fractures, retinal tearing, and bruising over multiple parts of her body. Upon initial separate interviews with S.S and V.G., both S.S. and V.G. admitted to

2

disciplining Jane Doe 1 by spanking, slapping, and swatting Jane Doe 1, both when Jane Doe 1 misbehaved as well as when she was having seizures.

### Investigation

5.      On September 20, 2022, at approximately 9:01 P.M., EMS responded to the known residence of S.S. and V.G. located at 2150 South Jackson Circle, Mohave Valley 86440.   S.S. had contacted EMS after Jane Doe 1 had suffered a seizure and appeared to have medical complications resulting from that seizure. Upon arrival at the residence, EMS workers transported Jane Doe 1 to the Valley View Medical Center (VVMC) located at 5300 Arizona 95, Fort Mohave, Arizona 86426 for further medical care. Upon Jane Doe 1's s arrival at VVMC, it was discovered that she had multiple bruises on her face, legs, back, and severe bruising on her buttocks. Additionally, VVMC staff determined that Jane Doe 1 tested positive for Tetrahydrocannabinol (THC) a known compound in marijuana. Due to the severity of the injuries, and testing positive for THC, VVMC personnel contacted officers from the Fort Mojave Tribal Police Department after suspecting possible child abuse.

6.      Fort Mojave Tribal Police Department Officer Anthony Diaz responded to the VVMC and photographed the injuries of Jane Doe 1.

7.      Based on the medical condition of Jane Doe 1, VVMC made the determination that she needed to be transported via helicopter to Sunrise hospital located at 3186 South Maryland Parkway, Las Vegas, Nevada 89109.

8.      Shortly after, FMTPD Officer Bellarmino Diaz (B. Diaz) responded to the hospital and conducted separate interviews of S.S. and V.G.  (Note: Officers from the

3

FMTPD know S.S. and V.G. from the community as domestic partners.)   Officer B. Diaz learned that S.S. lived with her domestic partner V.G., her nieces Jane Doe 1, and Jane Doe 2.  In approximately January 2022, S.S. became the legal guardian of Jane Does 1 and 2 and had remained their legal guardian until present. V.G. was not the legal guardian of either girls.

9.      Both minor children lived with S.S. and V.G. at their residence since approximately January 2022 to present. As of September 21, 2022, Jane Doe 1 and 2 have been removed from the home and temporarily placed in the custody of the Fort Mojave Tribal Social Services.

10.      FMTPD Officer B. Diaz conducted an interview of S.S. During the interview, S.S. was read her Miranda Rights and S.S. agreed to speak with Officer B. Diaz. S.S. advised Officer B. Diaz that Jane Doe 1 recently began having seizures. S.S. advised that both she and V.G. slapped, and swatted Jane Doe 1 while she was having seizures. S.S. admitted to striking, spanking, and swatting Jane Doe 1 on her buttocks as well as her face, back, and body. S.S. admitted to swatting Jane Doe 1 with her hand and her sandal.   S.S. advised that while Jane Doe 1 had a seizure, S.S. would slap Jane Doe 1 on her face and back, as well as pinch and bite her. S.S. advised Officer B. Diaz that she had a baby monitor camera in Jane Doe 1's room as well as C.D.'s room and the camera was linked to her cell phone. S.S. had seen V.G. yell at Jane Doe 1 on the baby monitor while S.S. was at work.

11.      Officer B. Diaz conducted an interview of V.G. (Age 35, Height 5'3", Height 5'5", Weight 190 lbs., Native American, residing at 2150 East Jackson Circle, Mohave Valley, Az 86440). During her interview, V.G. was read her Miranda Rights and V.G.

agreed to speak with Officer B. Diaz. V.G. advised Officer B. Diaz that she had disciplined Jane Doe 1 on multiple occasions with her hand by striking Jane Doe 1 on her butt and back.   She also admitted that she had pushed on Jane Doe 1's chest, slapped her back, and slapped her face to get her to wake up.   During the interview, V.G. admitted to giving Jane Doe 1 CBD oil in liquid form because she heard it helped with seizures. V.G. also admitted to slapping Jane Doe 1 on the face, taking Jane Doe 1 to the bathtub, bending Jane Doe 1 over, and spanking Jane Doe 1's butt. V.G. advised that she slapped Jane Doe 1's face until it began to bruise at which point, she began slapping her butt. V.G. advised that she had also witnessed S.S. discipline Jane Doe 1 on a baby monitor camera located at their residence.

12.    V.G. made statements to Officer B. Diaz that she watched and recorded videos of Jane Doe 1 when she was misbehaving. V.G. stated that she had a video recording of her spanking Jane Doe 1 because it was done in front of the camera.

13.    Both S.S. and V.G. admitted to Officer B. Diaz that they provided Jane Doe 1 with Cannabinol Oil (CBD) in liquid form.   Both S.S. and V.G. admitted that they were the two primary caregivers for Jane Doe 1 and that no one else was responsible for her care. Both S.S. and V.G. admitted that the abuse committed against Jane Doe 1 was committed at their home, the address listed for both subjects.

14.    Based on my training, education, and experience, I am aware that some CBD infused products, including oils, creams, and liquids can be rubbed on the body or inhaled and are typically used to treat chronic pain. Some of the infused CBD products may, or may not contain Tetrahydrocannabinol (THC).

15.     Based on my training, education, and experience, I am aware that THC is the principal psychoactive constituent of cannabis and a known lipid found in cannabis. THC is an active constituent in the drug Marijuana. Cannabis as a plant, is considered a Schedule 1 narcotic and is considered Federally illegal.

16.     Both S.S. and V.G. admitted to Officer B. Diaz that V.G. smoked marijuana in the home. V.G. admitted to Officer B. Diaz that she smoked Marijuana approximately three times a day and even did so while Jane Doe 1 was having a seizure to help herself decompress.

17.     On September 21, 2022, Officer B. Diaz contacted Federal Bureau of Investigation (FBI) Special Agent (SA) Kemper Mills regarding the interviews and concerning statements made by both S.S. and V.G. Officer B. Diaz requested the assistance of the FBI.

18.     On September 21, 2022, I was provided with multiple photos of Jane Doe 1 taken by Officer A. Diaz the night before. In discussing this matter with various medical personnel and viewing the photographs of Jane Doe 1's injuries, I understand that the abuse disclosed by the two caregivers do not explain the totality of the victim's injuries, and the injuries remain highly concerning for non-accidental, inflicted trauma.

19.     During the investigation it was learned that upon EMS arriving and advising S.S. that Jane Doe 1 needed to be transported to VVMC, S.S. advised paramedics that she needed to go back inside the home to retrieve her phone before Jane Doe 1 could be escorted.   This was despite the emergency condition of Jane Doe 1.

20.     Based on my training, education, and experience I am aware that cellular telephones can be used to communicate and send Short Message Service (SMS) text messages to another individual. Those text messages could contain valuable time stamps, data, metadata, and other valuable digital information that contain indicia of a criminal act.

21.     Based on my training, education, and experience, it is common for caregivers, especially those in a close personal relationship, to communicate about the care and condition of their children, as well as incidents involving their children, via telephone calls and text messages.   It is particularly common for these persons to communicate about their children after the child suffers an injury, and/or where one or more of the persons has been interviewed regarding possible abuse of the child.   Given the unexplained and suspicious injuries to Jane Doe 1, S.S. and V.G's roles as primary caregivers to the child, and S.S. retrieving her cell phone before going to the hospital, I submit there is probable cause to believe that evidence of the subject crime may be found on the persons of S.S. and V.G. and within their cell phones.

**Specifics Related to Search of SUBJECT CELLULAR TELEPHONES**

22.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONES.   Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

23.     In addition to the reasons set forth above, I submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this

7

Affidavit will be stored on the SUBJECT CELLULAR TELEPHONES for at least the following reasons:

    a.      I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing and/or concealing the crime and also as a storage medium for evidence of the crime.   Given the close relationships between the subjects as well as their responsibilities as sole caregivers, the cellular telephones are likely to be a storage medium for evidence of the crime.   From my training and experience, I believe that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense and/or concealment thereof.

    b.      Based on my knowledge, training, and experience, I know that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

    c.      Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools.   This is so because when a person "deletes" a file on a cellular telephone,

8

the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

        d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      24.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephones were used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONES because:

        a.      Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.      As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely

accessed, thus inculpating or exculpating the owner.  Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.  For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet.  Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation.  Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone.  Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on one

10

cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  25.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONES, including the use of computer-assisted scans.

**Conclusion**

  26.  Based upon my training, experience, and observations, I submit that there is probable cause to believe that there is evidence of violations of federal law, specifically Title 18, United States Code, § 1153 and ARS § 13-3623 and that the evidence of such violations is contained on the persons of Starla Shaffer, Height 5'3", Weight 220 lbs., Native American, and Vanessa Marie Gonzalez, Height 5'5", Weight 190 lbs., Native American, both residing at 2150 East Jackson Circle, Mohave Valley, Az 86440, to include their cell phones all as further listed in Attachment B.

27.    I respectfully request that a warrant be issued for the search of the persons

and cell phones described in Attachment A, for the items further described in Attachment

B.

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the
foregoing is true and correct.**

Executed on: _____

_____
Donald Ferreira
Special Agent, FBI

____X____ Sworn by Telephone

                    9/22/2022@10:46am
Date/Time:_____

_____
Honorable Eileen S. Willett
United States Magistrate Judge